UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAD MICHAEL SALSMAN, | : | CIVIL NO. 1:24-cv-00911 |
| Petitioner, | : | |
| v. | : | (Magistrate Judge Schwab) |
| SUPERINTENDENT MELINDA ADAMS, *et. al.*, | : | |
| Respondents. | : | |

# MEMORANDUM OPINION

## I. Introduction.

Petitioner Chad Michael Salsman ("Salsman"), has filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, arguing that the rescission of his unexecuted parole grant violated his procedural and substantive due process rights under the Fourteen Amendment. *Doc. 1*. The parties have consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). *Doc. 8*. Because Salsman had no liberty interest in his unexecuted parole and has not shown the Parole Board's actions were arbitrary or capricious, we deny his petition and decline to issue a certificate of appealability.

## II. Background and Procedural History.

Salsman is currently a state prisoner serving his sentence imposed by the Court of Common Pleas of Bradford County, Pennsylvania in Case No. CP-08-CR-80-2021. On May 7, 2021, Salsman pleaded guilty to (1) promoting prostitution, in violation on 18 Pa. C.S.A. § 5902(B)(1), (2) intimidation of a witness, in violation of 18 Pa. C.S.A. § 4952, and (3) obstruction of the law, in violation of 18 Pa. C.S.A. § 5101. *Doc. 1* at 1; *Doc. 7-2* at 26.[1] On July 9, 2021, he was sentenced to a minimum aggregate imprisonment sentence of 18 months and a maximum aggregate imprisonment sentence of 60 months. *Doc. 7-2 at 26*. Because Salsman was the former district attorney in Bradford County, the district attorney's office recused itself from the case and the case was prosecuted by the Attorney General. *Doc. 9* at 6.

Salsman was first denied parole on April 12, 2022. *Doc. 7-2* at 34. The Pennsylvania Parole Board ("Parole Board") stated its reasons for their decision, in part, included: "[Salsman's] need to participate in and complete additional institutional programs. The negative recommendation made by the department of corrections . . . [his] lack of remorse for the offense[s] committed" and "[t]he negative recommendation made by the prosecuting attorney." *Id.* Salsman

---

[1] When citing to page numbers of a document, we use the page numbers from the CM/ECF header on the top of the docket.

challenged the parole denial in a petition for review in the original jurisdiction of the Commonwealth Court of Pennsylvania on February 3, 2023. *Id.* at 38–44. After preliminary objections were briefed, but before they were decided, Salsman discontinued the case. *Id.* at 54.

On June 22, 2023, Salsman was again denied parole. *Id.* at 56.  The Parole Board stated the reason for the denial included his "failure to demonstrate motivation for success[,] [his] minimization/denial of the nature and circumstances of the offense(s) committed[,] [his] lack of remorse for the offense(s) committed)[,] [and] "[t]he negative recommendation made by the prosecuting attorney." *Id*.  On August 16, 2023, Salsman challenged this parole denial in a petition for review in the original jurisdiction of the Commonwealth Court of Pennsylvania. *Id.* at 59–69.  Briefing of the preliminary objections to the petition for review was completed by December 14, 2023. *Id.* at 77–78.  After briefing was completed in this case, the Commonwealth Court issued its decision denying his petition on August 26, 2024. *Doc. 10-1*.

In the meantime, Salsman was again interviewed for parole on January 5, 2024, and was granted parole on January 25, 2024. *Id.* at 81–82.  However, on March 14, 2024, before his parole grant was executed and Salsman was released from prison, the Parole Board rescinded the grant. *Doc. 7-2 at 84*.  The Parole Board stated that the decision to rescind was made "due to new information" and

specifically stated that the reasons included "[t]he negative recommendation made by the prosecuting attorney," and "[t]he nature of the crime." *Id.* Respondent further explains that it was discovered that the prosecuting attorney was not notified that Salsman was under parole consideration and, consequently, the Parole Board had not received a recommendation from the prosecuting attorney prior to granting parole on January 25, 2024. *Doc. 7* at 2–3.

This time, Salsman did not challenge the Parole Board's decision in state court. Instead, Salsman filed this federal Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 3, 2024. *Doc. 1.* He alleges that the rescission of his unexecuted parole violated his procedural and substantive due process rights under the Fourteen Amendment.

We ordered Respondent to file a response to the Petition. *Doc. 2.* Respondent has now filed its response (*doc. 7*), along with the relevant state records (*docs. 7-1–7-2*), and Salsman has filed a reply brief (*doc. 9*). The parties subsequently consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c). *Doc. 8.* Additionally, after the Pennsylvania Commonwealth Court issued its decision in Salsman's mandamus challenge to his June 2023 parole denial on August 26, 2024, Salsman filed a copy of that opinion as well. *Doc. 10.* The matter is now ripe for review.

## III. Legal Standards.

Salsman brings this action pursuant to 28 U.S.C. § 2254, which is the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. The writ of habeas corpus may be granted "on the ground that he or she is in custody in violation of the Constitution . . . of the United States." 28 U.S.C. § 2254(a). It is the petitioner's burden to prove that he is entitled to the writ. *Id.*; *see, e.g., Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

A challenge to the denial of parole is cognizable under § 2254. *Coady v. Vaughn*, 251 F.3d 480, 486 (3d Cir. 2001). However, the available relief is limited as a federal court may not grant parole or determine parole eligibility. *See Bridge v. U.S. Parole Comm'n*, 981 F.2d 97, 105 (3d Cir. 1992) ("A federal court may review decisions of the Parole Commission for abuse of discretion, but the relief a court may grant is limited"); *Billiteri v. U.S. Bd. of Parole*, 541 F.2d 938, 944 (2d Cir. 1976) ("The only remedy which the court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of non-compliance, the court can grant the writ of habeas corpus and order the prisoner discharged from custody.").

## IV. Discussion.

Salsman argues that rescinding his parole grant based on the *ex parte* negative recommendation from the prosecuting attorney violated both his procedural and substantive due process rights. While we decline to dismiss his petition for failure to exhaust his state court remedies, Salsman's due process arguments fail. Thus, Salsman is not entitled to habeas relief.

### A. Exhaustion Requirement.

Respondent first argues that Salsman's petition must be dismissed for failure to exhaust. "Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). One of these rules is that a state prisoner must exhaust available state remedies before filing a petition for habeas corpus in federal court. 28 U.S.C. § 2254(b) and (c). However, the Third Circuit has held that constitutional claims relating to the denial of parole are exempt from the exhaustion requirement because Pennsylvania does not provide a mechanism to challenge claims of constitutional violations in the denial of parole. *DeFoy v. McCullough*, 393 F.3d 439, 445 (3d Cir. 2005). Specifically, *DeFoy* relies on the

Commonwealth Court's decision in *Weaver v. Pennsylvania Bd. of Prob. & Parole*, 688 A.2d 766, 776 (Pa. Commw. Ct. 1997), which "held that mandamus is not available to a prisoner denied parole based upon a constitutional error by the parole board." *DeFoy*, 393 F.3d at 444.

Respondent argues that *DeFoy* is no longer good law, as Commonwealth Court decisions since *DeFoy* have routinely considered constitutional claims in their original jurisdiction relating to Parole Board decisions denying parole. *See Doc. 7* at 5–6 (citing *Homa v. Pa. Bd. of Prob. & Parole*, 192 A.3d 329 (Pa. Commw. 2018); *Jennings v. Pennsylvania Dep't of Corr.*, No. 522 M.D. 2015, 2016 WL 6994974 (Pa. Commw. Ct. Nov. 30, 2016); *Tillman v. Pa. Bd. of Prob. & Parole*, No. 575 M.D. 2011, 2013 WL 3946301 (Pa. Commw. Ct. Feb. 22, 2013); *Stief v. Pa Bd. of Prob. & Parole*, No. 301 M.D. 2013, 2014 WL 2939185 (Pa. Commw. Ct. June 27, 2014); *Wilson v. Pa. Bd. of Prob. & Parole*, 942 A.2d 270 (Pa. Commw. Ct. 2008); *Toland v. Pa. Bd. of Prob. & Parole*, 263 A.3d 320 (Pa. Commw. Ct. 2021)). Moreover, Salsman himself sought and obtained review of his 2023 parole denial through a mandamus action in the Commonwealth Court. *See Doc. 10-1*.

Accordingly, some district courts have questioned "[t]he continuing validity of *Defoy*." *Begandy v. Pa. Bd. of Prob. & Parole*, No. 2:19-CV-639, 2021 WL 1986415, at *4 (W.D. Pa. May 18, 2021) (citing *Bradley v. Wingard, et al.*, No.

3:15-cv-235, 2017 WL 11476608, *2 (W.D. Pa. Oct. 12, 2017), *report and recommendation adopted*, 2018 WL 10150909 (W.D. Pa. Sept. 5, 2018)); *see also Purcell v. Pa. Parole Bd.,* No. 3:23-CV-311-KAP, 2024 WL 5340671 (W.D. Pa. Jan. 10, 2024) (summarily dismissing § 2254 petition challenging parole denial as unexhausted because *DeFoy* is no longer good law), *report and recommendation adopted,* 2025 WL 240959 (W.D. Pa. Jan. 17, 2025). However, other district courts have found that *DeFoy* remains binding precedent. *See Mathis v. Rivello*, No. CV 3:23-225, 2025 WL 524301, at *8 (M.D. Pa. Feb. 18, 2025) ("[T]he fact remains that *DeFoy* is a precedential Third Circuit decision that remains binding on this Court under principles of vertical *stare decisis.*"); *Begandy v. Pa. Bd. of Prob. & Parole*, No. 2:19-CV-639, 2021 WL 1986415, at *4 (W.D. Pa. May 18, 2021) (acknowledging the issue of the continuing validity of *DeFoy* without deciding the issue and noting that the respondent raised the argument to preserve the issue for appellate review); *see also Roman v. DiGuglielmo*, 675 F.3d 204, 209 (3d Cir. 2012) (declining to address the issue of exhaustion in favor of deciding the case on the merits, but noting that despite the potential shift in Pennsylvania law as of 2012 they could not "comfortably say that it is clear enough to alter our decision in *DeFoy*").

Regardless, even assuming the Third Circuit would now find Salsman was required to exhaust his administrative remedies, a federal court "may bypass the

exhaustion issue altogether should [it] decide that the petitioner's habeas claim fails on the merits." *Roman v. DiGuglielmo,* 675 F.3d 204, 209 (3d Cir. 2012). We elect to do so here.

### B. Merits.

Salsman argues that "without a hearing, notice, or reasons given, on March 14, 2024, the Parole Board illegally and untimely rescinded the parole order based on an *ex parte* communication with the Attorney General." *Doc. 1* at 5. Salsman argues this action violated both his procedural and substantive due process rights. However, Salsman had no liberty interest in an unexecuted parole grant and has not shown that the decision was arbitrary or capricious. Accordingly, we find he has not shown his due process rights were violated by the recission.

### 1. Procedural Due Process.

To state a procedural due process claim, Salsman must first identify a "cognizable liberty or property interest." *Mudric v. Attorney Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)). However, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1,

9

7 (1979). And, the fact that Salsman's unexecuted parole grant was rescinded does not change the analysis: "[b]ecause Pennsylvania law provides that the Parole Board may rescind a determination granting parole at any point before it is "executed"—i.e., an inmate is released" a petitioner does "not have a liberty interest in the pre-execution grant of parole." *Fantone v. Latini*, 780 F.3d 184, 186 (3d Cir. 2015), *as amended* (Mar. 24, 2015); *Brown v. Clemens*, No. 23-3213, 2024 WL 4601681, at *1 (3d Cir. Oct. 29, 2024) (noting that, under Pennsylvania law, until an inmate is released "'[t]he decision to grant, rescind, or revoke parole is one purely of administrative, not judicial, discretion,' allowing the parole board to 'at any time rescind an order granting parole until it is 'executed'—i.e., the inmate is released on parole.'" (internal citations omitted)); *see also Jago v. Van Curen,* 454 U.S. 14, 16–17 (1981) (finding no liberty interest in release can be created by an unexecuted parole grant where parole decisions are wholly within the discretion of the state parole agency). Accordingly, despite Salsman's objections to the lack of hearing[2] or notice prior to the rescission and the *ex parte* nature of the prosecuting attorney's recommendation, he cannot state a procedural due process violation because he had no liberty interest in his unexecuted parole grant.

---

[2] We also note that parole applicants have no right to a hearing under Pennsylvania statute. *See* 61 Pa.C.S.A. § 6139(a)(4) ("Hearings of applications *may* be held by the board whenever in its judgment hearings are necessary." (emphasis added)).

### 2. Substantive Due Process

Salsman has also not shown his due process rights were violated. The Third Circuit has found that even where there is no liberty interest in parole release, "once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980) (citing *Perry v. Sundermann*, 408 U.S. 593, 597 (1972) ("[E]ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely.")). For example, the Parole Board may not "deny parole on the basis of race, religion, or political beliefs, or on frivolous criteria with no rational relationship to the purpose of parole such as the color of one's eyes, the school one attended, or the style of one's clothing." *Id.* at 236, n.2. However, "when an executive action is at issue, only the most egregious conduct will be considered arbitrary in the constitutional sense." *Hunterson v. DiSabato*, 308 F.3d 236, 248 (3d Cir. 2002). "[F]ederal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001).

Here, the Parole Board's reason for the rescission of their previous grant of Salsman's parole is clear from both the notice and Respondent's response: "the negative recommendation made by the prosecuting attorney." *Doc. 7-2* at 84. As explained by Respondent, it was discovered that the prosecuting attorney was not notified that Salsman was under parole consideration, and, consequently, the Parole Board had not received a recommendation from the prosecuting attorney prior to granting parole on January 25, 2024. *Doc. 7* at 2–3. The Parole Board also cited the nature of the crime. *Id.* Consideration of the recommendation of the prosecuting attorney as well as the nature of the crime are both among the areas the Parole Board is statutorily required to consider when deciding whether to parole an inmate. *See* 61 Pa.C.S.A. § 6135(a)(1), (2).

Nor is there any basis to find that the decision was arbitrary and capricious because the details of negative recommendation were "*ex parte.*" Specifically, Salsman argues that by not disclosing the negative recommendation, the prosecuting attorney has violated the Rule 3.5 of the Pennsylvania Rules of Professional Conduct. *Doc. 9* at 14; Pa. R. Prof. Conduct 3.5 (providing in part that a lawyer shall not "communicate ex parte with a [judge juror, prospective juror or other official] during the proceeding unless authorized to do so by law or court order"). Even if Salsman is correct that the prosecuting attorney's ex parte communication violated the Pennsylvania Rules of Professional Conduct, because

12

Salsman has no procedural due process rights, there is no federal basis to claim that he was entitled to review his parole file himself. Nor would a violation of state law be grounds for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

Salsman speculates that the negative recommendation could only be for arbitrary or capricious reasons, because, according to Salsman he clearly met the criteria for parole: "It is hard to imagine other than a mean spirited, vindictive and revengeful Attorney General, that there is any reason for a negative recommendation." *Doc. 9* at 14. Salsman further argues that there is "no government interest here for this illegal and unprofessional rescission. This rescission should shock one's conscience." *Id.* at 18; *see also Doc. 1* at 17; *Doc. 9* at 6, 10–11, 14.

While we recognize that Salsman does not have access to the contents or details regarding the negative recommendation, his claims do not rise above a speculative level. The Parole Board granted parole without having received the recommendation of the prosecuting attorney. The Parole Board reconsidered its decision after receiving the statutorily required recommendation. The fact that the recommendation was negative is neither shocking (especially as all previous recommendations had been negative) nor evidence in itself of a mean spirit, vindictiveness and revenge on the part of the prosecuting attorney. And, more to

13

the point, it is not evidence that the Parole Board's decision was arbitrary or capricious. Again, the Parole Board was statutorily required to consider the recommendation of the prosecuting attorney, *see* 61 Pa.C.S.A. § 6135(a)(2), and Salsman has not identified a right to review all the materials the Parole Board considers.

Accordingly, we find that Salsman has not shown a violation of his due process rights stemming from the rescission of his unexecuted parole grant. His petition is, therefore, denied.

**IV. Certificate of Appealability.**

For the reasons stated above, we will deny Salsman's petition for a writ of habeas corpus. A state prisoner may not appeal the denial of a habeas petition "[u]nless a circuit justice or judge issues a certificate of appealability[.]" 28 U.S.C. § 2253(c)(1)(A). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473,

484 (2000).  Because reasonable jurists would not find our assessment of the claim debatable or wrong, we will not issue a certificate of appealability.

## V. Conclusion.

Based on the foregoing, we will deny Petitioner Salsman's petition for a writ of habeas corpus and we will deny a certificate of appealability.  An appropriate order will be issued.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge